UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Brian John R., | Case No. 23-CV-2023 (JFD) |
| Plaintiff, | |
| v. | **ORDER** |
| Martin J. O'Malley, Commissioner of the Social Security Administration, | |
| Defendant. | |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Brian John R. seeks judicial review of a final decision by the Commissioner of the Social Security Administration, which denied the Plaintiff's application for disability insurance benefits ("DIB"). The case is before the Court on the parties' cross-Motions for Summary Judgment (Dkt. Nos. 12 and 15). Plaintiff seeks summary judgment and a remand to the agency under Sentence Four of 42 U.S.C. § 405. Plaintiff claims that the administrative law judge ("ALJ") did not adequately assess Plaintiff's post-traumatic stress disorder and also claims that the ALJ failed to account for Plaintiff's limitations in persistence at step three of the five-step process by which Social Security disability claims are evaluated. Defendant both opposes Plaintiff's motion for summary judgment and affirmatively seeks summary judgment affirming the Commissioner. Because the Court finds the ALJ's decision was supported by substantial evidence and is free of legal error, the Court grants Defendant's motion for summary

1

judgment, denies Plaintiff's motion for summary judgment, and affirms the Commissioner.[1]

## I. Background

Plaintiff applied for DIB on December 20, 2021, alleging a disability onset date of December 31, 2017 due to bilateral shoulder injuries, depression, anxiety, and post-traumatic stress disorder ("PTSD"). ((See Soc. Sec. Admin. R. (hereinafter "R.") 77.)[2] The Social Security Administration also identified potential issues with substance abuse and hypertension. (*Id.*) Plaintiff has past relevant work experience as the driver of a food delivery truck. (R. 54.)

### A. Procedural History

Plaintiff filed an application for DIB on December 20, 2021. (R. 77.) He stated that he had been unable to work since December 31, 2017 due to PTSD, anxiety, depression, and issues with both of his shoulders (*Id.*), though Plaintiff told the state agency reviewer who reviewed the initial denial of Plaintiff's DIB claim that "his shoulders is [sic] not the issue, it is his mental health. He does not feel he has any ongoing issues with his shoulders.

---

[1] As explained below in the discussion of legal standards, a Plaintiff can seek judicial review of a decision by the Commissioner on grounds that the ALJ's decision is not supported by substantial evidence, on grounds that the ALJ committed legal error, or on both grounds. Plaintiff in this case does not make clear whether he challenges the ALJ's decision because it is legally erroneous, or whether Plaintiff alleges that any shortfall in the evidence is the result of legal errors on the ALJ's part. In this Order, the Court finds that the ALJ's decision was both supported by substantial evidence and was free of legal error.

[2] The administrative record is filed at Dkt. No. 8. The social security record is consecutively paginated, and the Court cites to that pagination rather than the ECF number and page.

They do not prevent him from working or completing daily activities." (R. 91.) The state agency reviewers who first evaluated Plaintiff's DIB application also noted "hidden allegation[s]" of substance use disorder and hypertension. (R. 78.) Of note to this summary judgment motion, in evaluating Plaintiff's claimed mental health limitations the state agency examiner found only mild impairments of the four "Paragraph B" criteria: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. (R. 82.) Plaintiff's DIB application was denied at the initial level on March 29, 2022 (R. 102, 105) and at the reconsideration level on July 28, 2022. (R. 116.)

Plaintiff then requested a hearing before an ALJ. (R. 123.) That hearing was held before ALJ Mary D. Morrow on December 20, 2022, by telephone because of the COVID-19 pandemic. (R. 47, 49.) At the hearing, Plaintiff was represented by counsel. (R. 50.) Plaintiff testified, as did an independent vocational expert (R. 52 – 70 and R. 70 – 75). In a written order dated February 27, 2023, the ALJ upheld the decision to deny DIB benefits. (R. 22.) The Social Security Administration's Appeals Council affirmed the ALJ's decision (R. 1), making the ALJ's decision final agency action for purposes of judicial review.

  **B.**  **The ALJ's Decision**

After finding that Plaintiff's work history provided Plaintiff with Social Security insurance coverage through December 31, 2021 (R. 11), ALJ Morrow analyzed Plaintiff's claim using the five-step process described at 20 C.F.R. § 404.1520(b). This analytical methodology calls for the ALJ to sequentially examine the evidence bearing on five aspects of Plaintiff's claim. If, at any step, the ALJ can find that Plaintiff is either disabled or not

disabled within the meaning of the Social Security Act using the criteria of that step, the analysis terminates; but if the ALJ cannot rule that Plaintiff is either disabled or not disabled, the ALJ proceeds to the next step.

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity between December 31, 2017 (the date on which Plaintiff alleged he became disabled) and December 31, 2021 (Plaintiff's last-insured date). (R. 13.)

At Step Two, the ALJ found that Plaintiff had the following severe impairments: moderate to severe neural foraminal stenosis of the cervical spine; a high grade, full thickness tear of the right shoulder's supraspinatus tendon post arthroscopy; major depressive disorder; generalized anxiety disorder; PTSD; attention deficit hyperactivity disorder ("ADHD"); and amphetamine use disorder. (*Id.*) The ALJ found that these severe impairments significantly limited Plaintiff's ability to perform basic work activities. (*Id.*)

At Step Three, the ALJ found that none of Plaintiff's severe impairments, alone or in combination with other impairments, met or medically equaled one of the impairments listed at 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). Because Plaintiff seeks summary judgment based on his mental health impairments, not his shoulder issues, the Court summarizes only the ALJ's severity analysis of Plaintiff's mental health.

The Social Security regulations list 11 categories of mental disorders. The regulations follow the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-V") in categorizing PTSD as a Trauma and Stressor-Related Disorder. Social Security Administration, PTSD Fact Sheet, available at

4

https://www.ssa.gov/disability/Documents/PTSD%20Fact%20Sheet.pdf (last visited Sept. 21, 2024). An ALJ must use, among other things, Paragraph B of the listing for Trauma and Stressor-Related Disorders when evaluating a claim for disability based on PTSD. 20 CFR 1420(d), App. 1, 12.B.11.b. Paragraph B has four broad categories of mental functioning. App. 1 at 12.E. If the ALJ finds a claimant limited in any of these four categories, the ALJ must describe the severity of that limitation on a scale that runs from "mild" to "extreme." App. 1 at 12.F. A mental health impairment will be categorized as severe if a claimant has at least one Paragraph B limitation that is "extreme" or two Paragraph B limitations that are "marked." *Id.* An extreme Paragraph B limitation is an inability to function independently, appropriately, or effectively, and on a sustained basis, while a marked Paragraph B limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis. *Id.*

The ALJ found that Plaintiff had a mild limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing oneself. (R. 15-16.) Because Plaintiff had no marked or extreme Paragraph B limitations, the ALJ found him not to suffer from a severe impairment of his mental health.

Before moving to Step Four, the ALJ fashioned a residual functional capacity ("RFC") for Plaintiff.[3] Plaintiff's RFC as given by the ALJ was that he could perform light

---

[3] "Residual functional capacity" is what the claimant is able to do despite limitations caused by all of the claimant's impairments. *See* 20 C.F.R. § 404.1545(a). The ALJ also must make

5

work as defined at 20 CFR 404.1567(b). However, the ALJ inserted some additional limitations into Plaintiff's RFC in order to account for his specific situation. As to those additional limitations that pertain to Plaintiff's mental health, the ALJ limited Plaintiff to the performance of simple, routine, and repetitive tasks, so long as they were done slower than "a production rate-pace (so, for example, no assembly line work)." (R. 17.) Plaintiff's RFC was also limited to responding "appropriately to occasional interaction with supervisors, co-workers, and the general public." (*Id.*)

In explaining the mental health components of Plaintiff's RFC, the ALJ noted that at an intake evaluation in January 2018, Plaintiff was diagnosed with severe bipolar disorder and severe methamphetamine use disorder. Plaintiff's mood was "labile," his thoughts "tangential," and he had limited insight. (R. 19.) Apparently, Plaintiff could not sit still and talked nonstop for two and one-half hours. (*Id.*)

Plaintiff then went three and one-half years without, apparently, interacting with any mental health treatment provider. (R. 19.) He began inpatient chemical dependency treatment in June of 2021, at which time he was diagnosed with PTSD and major depression. (*Id.*) Following a 90-day stay in a treatment program, Plaintiff had normal mental status findings in September 2021, and by October 2021 Plaintiff "was doing well overall;" he was in a relationship, was attending groups, his mental status examinations were within normal limits, and he was not taking medication. (R. 20.) The ALJ noted that

---

"explicit findings" regarding the physical and mental demands of Plaintiff's past work and compare those demands with his residual functional capacity to determine whether he can perform the relevant duties. *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000).

Plaintiff continued to attend sober meetings after the date last insured (December 31, 2021). (*Id.*) Plaintiff had memory concerns, and his cognitive function tests showed "some deficits warranting further evaluation." (*Id.*) He was diagnosed with complex PTSD with moderate symptomatology. (*Id.*)

The ALJ noted that the state agency examiners had found Plaintiff's mental impairments to be nonsevere, but the ALJ rejected this conclusion because the ALJ found Plaintiff's mental health impairments caused more than a minimal limitation in Plaintiff's ability to perform basic work tasks. (*Id.*) Plaintiff's "community connector," Amanda Rodriguez, who had known Plaintiff for four months, stated that Plaintiff attended group meetings, read, and spent time with his significant other. He had no difficulty with personal care. He was able to go outside alone daily, could shop in stores, and attended church daily. (*Id.*) However, he also had difficulty with memory, concentration, following instructions, and getting along with others. He did not handle stress well, nor did he finish things he started. (*Id.*)

Based on all of this, the ALJ characterized Plaintiff's overall level of mental functioning as "moderate" and further stated that there was no need for greater limitations than those in the RFC. (R. 19.)

At Step Four, the ALJ found that Plaintiff could not perform his past relevant work as a truck driver and food deliverer. (R. 20.)

At Step Five, the ALJ asked the vocational expert whether there was work in sufficient numbers in the national economy for a hypothetical individual with Plaintiff's RFC, age, and education. The vocational expert stated that the hypothetical individual

7

could work as a marker (136,000 jobs), router (25,000 jobs), or mail clerk (11,000 jobs). (R. 72.) Even if the hypothetical individual were limited to sedentary work, they could work as a document preparer (15,000 jobs), circuit board assembler (17,000 jobs), or film touch-up inspector (5,000 jobs). (R. 73.) Because Plaintiff could work at one of these jobs, the ALJ found Plaintiff not disabled within the meaning of the Social Security Act and denied his application for DIB. (R. 21.)

## II. Legal Standards

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence in the record as a whole supports the decision, 42 U.S.C. § 405(g), or whether the ALJ committed an error of law, *Nash v. Commissioner, Social Security Administration*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id*. (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or because the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

Plaintiff bears the burden of proving disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for DIB, the claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The disability, not just the impairment, must have lasted or be expected to last for at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

## III. Discussion

### A. The ALJ Properly Evaluated Plaintiff's PTSD.

Plaintiff picks a single paragraph from the ALJ's decision, ignores the substantial additional material (summarized above in this order) in the ALJ's decision that addressed Plaintiff's PTSD, and on that limited basis asserted that the ALJ's consideration of Plaintiff's PTSD had been inadequate. Plaintiff quotes the paragraph to which he takes exception in full at page nine of his brief in support of his motion for summary judgment.

> The claimant did continue to receive treatment after the expiration of the date last insured. He continued to attend sober meetings and receive mental health support. He was seeking evaluation for memory concerns and his cognitive assessment test did show some deficits warranting further evaluation. The claimant's anxiety and depression were elevated as he maintained sobriety. (Exs. 9F, 10F, 11F, 13F.) Almost one year after the expiration of the date last insured, the claimant was diagnosed with complex PTSD and had a Global Assessment of Functioning score of 51 to 60, consistent with moderate symptomatology. (Ex. 15F.) This evidence continues to support an overall moderate level of functioning and does not support greater limitations than those provided in the residual functional capacity.

9

Plaintiff does not explain why he focuses on this single paragraph to the exclusion of all the additional material in the ALJ's decision. Plaintiff claims that "the ALJ provided no other findings regarding this evidence." (Br. Of Plaintiff, Dkt. No. 13, at 9.) This is simply incorrect, as the summary of the ALJ's discussion of Plaintiff's mental health above demonstrates. Plaintiff also asserts that the evaluation and diagnosis (presumably of complex PTSD, although Plaintiff does not specify) occurred within three months of the date last insured. Plaintiff does not cite the record for this assertion, probably because the record does not support Plaintiff's claim. The earliest diagnosis of complex PTSD in the medical records is in an Adult Initial/Comprehensive Evaluation performed at Hiawatha Mental Health on November 29, 2022 (R. 879, 888), eleven months – or "almost one year" – following the last insured date. While there are treatment notes endorsing a diagnosis of PTSD as early as late February of 2022, (R. 857), it appears that a diagnosis of complex PTSD is not the same as a diagnosis of PTSD – while this distinction is not well explained in the record, complex PTSD is the result not just of suffering trauma, but of suffering repeated trauma. (R. 888.)

Distressingly, Plaintiff said he attempted suicide by hanging in May of 2021. (R. 882.) This suicide attempt was noted by the ALJ. (R. 19.) As noted above, a few months after the alleged suicide attempt, Plaintiff was functioning well with moderate limitations due to mental health. As to the suicide attempt itself, Plaintiff's mental health provider noted that by the summer of 2021 Plaintiff was not "an immediate risk to self or others." (*Id.*)

Plaintiff does not even attempt to undercut the ALJ's long and detailed mapping of Plaintiff's specific situation onto the Paragraph B criteria and from there on to an RFC. Plaintiff's allegation that the ALJ did not adequately assess Plaintiff's PTSD is belied by the record in this case.

### B.     At Step Three, the ALJ Adequately Considered Plaintiff's Limitations in Persistence

Plaintiff also alleges that the ALJ's Step Three consideration of Plaintiff's limitations in persistence was inadequate. The Court finds this allegation not well founded.

The ALJ found Plaintiff had a moderate limitation in the Paragraph B category of concentrating, persisting, or maintaining pace. (R. 16.) (By comparison, the state agency consultants found this limitation to be only mild, so the ALJ found Plaintiff's limitations more pronounced than did the state agency consultants. (R. 82, 93.))

Plaintiff's argument is somewhat unclear, but it appears that Plaintiff credits the ALJ with having crafted an RFC that includes language that the Eighth Circuit has found adequate to capture limitations in persistence. Brief of Plaintiff at 15-16. Yet, Plaintiff then criticizes the ALJ for accounting for Plaintiff's persistence limitation by declaring fast-paced production jobs off-limits for Plaintiff, without, Plaintiff claims, the ALJ adequately defining "fast-paced production." *Id.* at 16.

There was no need for the ALJ to define "fast-paced production," because the ALJ did not use the term "fast-paced production."  Plaintiff's RFC says, in relevant part "He can perform simple, routine, and repetitive tasks, but not at a production rate-pace (so, for example, no assembly line work)." It might be that Plaintiff chose the alternative, but

11

imprecise, locution "fast-paced production" in order to bring himself within the scope of the holding of a Seventh Circuit case, *Varga v. Colvin*, 794 F. 3d 809, 815 (7th Cir. 2015). In that case, the Seventh Circuit reversed an ALJ who had used the term "fast-paced production." *Id*.

For three reasons, the Court is not persuaded that the Seventh Circuit's holding in *Varga* undercuts the ALJ in Plaintiff's case. First, because *Varga* is a Seventh Circuit case it is not binding in the Eighth Circuit. Second, the language *Varga* found deficient was different from the language used by the ALJ who crafted Plaintiff's RFC. Third and finally, the Seventh Circuit in *Varga* reversed the ALJ because the ALJ did not give content to the term "fast-paced production." By contrast, the ALJ in this case gave content to the term she actually used ("production rate-pace") by specifying "for example, no assembly line work."

The ALJ's RFC adequately considered Plaintiff's Paragraph B limitation in persistence.

## IV.  Conclusion

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. Plaintiff's Motion for Summary Judgment (Dkt. No. 12) is **DENIED**;

2. Defendant's Motion for Summary Judgment (Dkt. No. 15) is **GRANTED**;  and

3. The Commissioner's decision is **AFFIRMED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date: September 23, 2024

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge